WARMACK v. ZINGG.

Opinion delivered April 15, 1929.

*H. B. McKenzie,* for appellant.

*McRae & Tompkins,* for appellee.

MEHAFFY, J. The appellant instituted this suit to partition an oil and gas lease on land described in the complaint and for an accounting on certain royalty interests from oil produced and sold by the appellee, R. M. Zingg.

The defendant filed answer, denying all the material allegations in plaintiff's complaint, except as to the royalty interests of appellant, and admitted that the defendant was due appellant $61.80. The court entered a decree finding in favor of the plaintiff against the defendant as to the royalty interests for $61.80 and costs, and dismissed the complaint for want of equity, in so far as the other relief asked was concerned. There are only two questions to be considered by this court. The first is whether there was a forfeiture of the lease, and the second, whether a judgment for all the costs should be against the defendant.

The first is purely a question of fact, and we deem it unnecessary to set out or call attention to the evidence, except that part of it relating to the forfeiture.

Fanny Kendrick testified that the rentals were paid regularly until the lease lapsed; the rentals were paid to Solberry McKinney, who was authorized in writing to collect same. Witness does not remember when the last rentals were paid to her, but it was before the lease was made to Warmack; that no rentals were paid to her after that time. Her portion of the rentals was a little more than $5. Witness never received the rentals due just prior to the lease to Warmack; it was never tendered to her. After the lease was made to Warmack, Warmack paid the rentals.

P. R. Warmack testified that he took a lease from Fanny Kendrick, dated February 1, 1924, and that, six months or a year later, he sold it to J. B. Warmack, the appellant.

J. B. Warmack testified as to the purchase of the lease, and that he paid the rentals. The well had been drilled by Miss Zingg, which produced oil, but he did not know how much. Before he purchased the lease, he had been told that the Zingg lease was forfeited.

Solberry McKinney testified that the rental due December 1, 1923, was tendered to him on the first Sunday in February, and he refused to accept it because it was tendered two months after the time it was due; that he finally accepted it, and sent it to his sister, but she returned it; that Miss Zingg insisted on him accepting the money; that he told her he had sent Fanny her part of it and that she did not accept it; that, after that time, he never sent any more money to his sister; that Miss Zingg had not settled with him for the royalty; that Miss Zingg paid him $20 on February 7, 1924; that was the only $20 she ever paid; she paid it in cash; that he had collected several payments, and turned the money over to his sister. He also testified that the family did not want Miss Zingg to drill in the cemetery. Witness testified that the part of the money sent to his sister was returned, with the explanation that she had leased her interest to Warmack, and that she had never received any rental after that.

R. M. Zingg testified that she was the owner of the oil and gas lease in controversy, and that she tendered the rental due a week or ten days before December 1, 1923. She tendered it to Solberry McKinney, and he refused to accept it. Later, she learned that the trouble was that they did not want any drilling in the cemetery, "and he said if I would not drill in the cemetery he would accept the lease rental;" this was agreed upon, and the $20 was paid. She had always paid the rent to S. D. McKinney. There is a good deal of testimony about

the cemetery and a controversy about the McKinneys not wanting any drilling done in the cemetery.

The appellant insists on a reversal of the case on the ground that the lease had been forfeited, and states that as to whether the tender of rentals was made depends upon the testimony mainly of two witnesses, the defendant, Miss Zingg, and S. D. McKinney. It is undisputed that the rentals had been paid prior to this time to S. D. McKinney and accepted by him up to December 1, 1923. Miss Zingg testified that she tendered the rental a week or ten days before it was due; McKinney testified that the rental was not tendered to him until February 7, 1924. It is conceded by appellant that, under the testimony of these two witnesses alone, the court would probably be justified in saying that the plaintiff had not shown by a preponderance of the evidence that the lease had been forfeited; but it is contended that the facts and circumstances corroborate McKinney, and that the preponderance of the evidence shows that the lease was forfeited. The lease itself provided that if no well was commenced on said land on or before the 1st day of December, 1921, this lease shall terminate as to both parties, unless the lessee, on or before that date, shall pay or tender to the lessor, or to the lessor's credit in the Bank of Waldo, at Waldo, Arkansas, or its successors, which shall continue as a depository regardless of change in ownership of said lands, the sum of 25 cents per acre, which shall operate as a rental and cover the privilege of deferring the commencement of a well for six months from said date. It is agreed that a tender to S. D. McKinney, if made before the time expired, would prevent a forfeiture. The lease itself provides that, if the lessee tenders or pays to the lessor, this would prevent a forfeiture, and the lessor had constituted S. D. McKinney her agent to collect, and he had collected up to that time. Therefore, if the tender was made, as testified to by Miss Zingg, there was no forfeiture. If the tender was not made, as McKinney says it was not, then there was a forfeiture.

It is argued by the appellant that Miss Zingg had the choice of two alternatives; she could tender to the lessor, or to the Bank of Waldo; also, that she should have tendered to the bank, and thereby avoided any litigation or dispute. It is contended that her failure to do so under the circumstances is a circumstance which actually discredits her testimony. We do not agree with the appellant in this contention. She had been paying to McKinney all the time, and if she made the tender when she says she did, she had no reason to believe that it would not be accepted. We think the most natural and reasonable thing for her to do, if she made the tender as she claims, was to make it in the manner she did, because this was the way she had paid all prior rentals. The testimony shows that the McKinneys did not want any drilling done about the graves in the cemetery, and, whether there were any threats or not, the undisputed proof shows that there was some discussion about the drilling in the cemetery, and that Miss Zingg finally agreed not to drill in the cemetery, and that McKinney then accepted the rentals. McKinney and Miss Zingg went to Mr. Tompkins' office, where she made an affidavit that she would not drill a well in their cemetery. This affidavit was prepared at Mr. Tompkins' office, and McKinney then accepted the rental. Whether the drilling in the cemetery, or the fear that drilling would be done in the cemetery, was the cause of his refusal to accept the rental, is a question of fact, but it evidently had something to do with it or they would not have gone to Mr. Tompkins' office, where the affidavit was prepared, and thereafter accepted the rental.

It is also contended by the appellant that the fact that she took no precaution to get a witness other than herself is a circumstance discrediting Miss Zingg; but if her testimony is true, that is, if she made the tender before the time expired, there would be no reason for her to take any precaution or to have a witness present, because she had been paying to McKinney, and he had been

accepting the rental up to this time, and it would be perfectly natural for her to go to the person to whom she had been paying the rentals and tender the money.

As to whether the tender was made, as testified to by the defendant, or was made after the time expired, as testified to by McKinney, is a question of fact, and we do not think the finding of the chancellor was against the preponderance of the evidence. The lease provides that she may tender the money either to the lessor or the Bank of Waldo. She had the absolute right to tender it at either place, and, if she tendered it and it was refused, then there was no forfeiture, although the money was not paid. She did all that the lease required her to do.

Appellant also contends that, even if the tender was made, as appellee claims, there is no proof that she ever paid any other rentals. This question, however, was not an issue in the court below, and appellant cannot raise that question here. *Winfrey* v. *People's Savings Bank,* 176 Ark. 941, 5 S. W. (2d) 360; *Jones* v. *Dowell,* 176 Ark. 986, 4 S. W. (2d) 949; *Burke Construction Co.* v. *Board of Imp. Dist. No. 20,* 161 Ark. 433, 256 S. W. 850; *Connelly* v. *Earl Frazier Special School Dist.,* 170 Ark. 135, 279 S. W. 13. Besides, as contended by appellee, instead of paying $10, the amount due at that time, $20 was paid, and we think the most reasonable conclusion which can be reached is that this $20 was for rentals. The chancery case will not be reversed by this court unless the chancellor's finding is against the preponderance of the evidence. We have reached the conclusion that the finding and decree of the chancellor is supported by a preponderance of the evidence, and is therefore binding on this court. *Skaggs* v. *Prince,* 176 Ark. 1170, 5 S. W. (2d) 927; *Wooten* v. *Wooten,* 176 Ark. 1174, 5 S. W. (2d) 340; *Manzie* v. *White,* 161 Ark. 1, 255 S. W. 567; *Webb* v. *Alma Cash Store,* 160 Ark. 290, 254 S. W. 670; *Griffin* v. *Eustace,* 160 Ark. 508, 255 S. W. 12; *Markle* v. *Fallin,* 161 Ark. 504, 256 S. W. 841; *Linker* v. *Rachel,* 163 Ark. 426, 260 S. W. 440; *McGowne* v. *Frisby,* 163 Ark. 634, 260

S. W. 728; *Young* v. *Knox,* 165 Ark. 129, 263 S. W. 52; *Griffin* v. *Whittaker,* 167 Ark. 461, 268 S. W. 42.

The appellee contends that the court erred in adjudging costs against her after the date of the offer to confess judgment. Appellee, in her answer, offered to confess judgment for $61.80, and she relies on § 1343 of C. & M. Digest, and *Sheppard* v. *Dudley,* 132 Ark. 603, 201 S. W. 1112. In the case referred to the court said, quoting from Hunt on Tender:

"The statutory offer of a judgment must be for a specific sum independent of costs, and the costs accrued at the date of the offer; unless the statute provides that the offer shall carry costs, in which case the costs need not be mentioned. An offer of a judgment for a certain sum, without mentioning any costs, if not accepted, will not avail the defendant as a statutory offer. Our statute on this subject contains no provision in regard to costs."

The section of C. & M. Digest relied on by appellees does not apply to equity cases, where the giving of costs, which are expenses pending suit, as allowed by the court, is entirely discretionary. *Jones* v. *Adkins,* 170 Ark. 298, 280 S. W. 389; *McCauley* v. *Ark. Rice Growers' Cooperative Assn.,* 171 Ark. 1155, 287 S. W. 419; *Bank of Dermott* v. *Measel,* 172 Ark. 193, 287 S. W. 1017; *Driver* v. *J. T. Fargason Co.,* 174 Ark. 114, 295 S. W. 35; *Union & Planters' Bank & Trust Co.* v. *Pope,* 176 Ark. 1023, 5 S. W. (2d) 330.

The chancery court takes into consideration all the circumstances of the particular case, the situation or conduct of the parties, and exercises its discretion with reference to costs, and, unless there is an abuse of discretion, the awarding of costs of the chancery court will not be disturbed. We do not think the chancellor abused his discretion in this case.

We find no error, and the decree of the chancery court is affirmed.