## GATES BROS. ET AL. V. BURKETT.

1. LABORER'S LIEN: *None without writing.*
   There can be no statutory laborer's lien without writing.

2. APPROPRIATION OF PAYMENTS: *Right of creditor.*
   The right of a creditor to make application of payments to one of several debts owing from his debtor, applies only to those debts then due; and does not apply at all where the debtor himself makes the appropriation.

APPEAL from *Prairie* Circuit Court.
Hon. M. T. SANDERS, Circuit Judge.

*Clark & Williams*, for appellant.

Burkett having no written contract had no laborer's lien. Nor had he any lien as a pledgee—he was merely the servant of Hurt, and as such hauled the cotton to the gin. But if he was a pledgee, he lost his lien by leaving the cotton with the ginner, and Gates' trustee came into peaceable possession, and lawfully. Retention of possession is as essential to a pledgee as to get possession. (*8 Jones, N. C., 453; 38 Ga., 391; 19 La. Ann., 17; 22 N. H., 196.*) And the lien created by the pledge can be maintained only by a *continuous* possession. (*63 Me., 459; 2 Pick., 610.*) As pledgee of Hurt, he could have no greater right than his pledgor, and Hurt's rights could not avail against his trust deed to Gates.

The mortgage expressly provided that the entire mortgage debt should become due whenever Hurt should sell or dispose of any of the property, so that by the act of pledging Hurt forfeited all right, even that to time upon the debt not then due. It was optional with the trustee to take possession on the first default both as to debts due and to become due. (*Jones' Ch. Mort., sec. 374.*) In the absence of stipulation to the contrary, the mortgagee has the right of possession from the date of the mortgage. (*Ib., secs. 426, 453.*)

All the debts due had not been paid, and the court's finding of facts is contrary to the evidence.

The appeal bond is not such as is provided for in *section 321 Gantt's Digest*, and no judgment could be rendered upon it.

*George Sibley*, for appellee.

Gates having been paid all that was due them by Hurt, had no right whatever to the cotton, and it having been put in Burkett's possession by Hurt to secure his debt, the judgment is right.

EAKIN, J.   On the twenty-fourth day of February, 1882, S. T. Hurt and wife conveyed, in trust, to G. O. Littlejohn, 285 acres of land lying in separate parcels, " as well as all crops that may be grown on said lands, of any description whatever, by the parties of the first part, for the years 1882, 1883 and 1884, and all interest they may have in crops grown by tenants, and all liens they may have upon crops grown upon said lands, or any portion thereof for said years."   There was also included in the conveyance a lot of mules, two wagons, and other farming utensils. Also, "all crops grown by the parties of the first part upon land bought from Isaac Gates & Bro., known as the John W. Gates land, for the years 1882, 1883 and 1884, and also all the interest that the parties of the first part may have in, and all liens that they may have upon the crops grown on said place for said years."

The conveyance sets forth an indebtedness of said Hurts to the firm of Isaac Gates & Bro., in the sum of $4,902.94, evidenced by three notes of that date, two for $1,634.31 each, due respectively on the thirty-first day of December, 1882 and 1883, the third being for $1,634.32, due the thirty-first day of December, 1884, all bearing interest at the rate of 10 per cent. per annum from date till paid.

Also, a further debt to said firm of $255.45, evidenced by note of same date, due October 1, 1882, with ten per cent. interest from date till paid.

It further recited that the parties had contracted together that said firm should furnish the Hurts during the year 1882, merchandise and farm supplies not to exceed the sum of $944.55, to be furnished by said firm at their option, and to become due on the thirty-first day of December, 1882.   After that to bear 10 per cent. interest till paid.

The conveyance was to be void in case of the payment of said debts according to their tenor and effect; but in case of failure, as each became due, it was made the duty of the trustee, upon request of the firm, to take possession of the property, or any part of it, as he might be directed by the firm, advertise and sell, as therein directed, to the highest bidder for cash, to pay off the costs and expenses of the trust; then to pay said debts, and the remainder to the grantors.   It was further provided, that if the parties grantor should, without the consent of the trustee, sell or attempt to sell, or dispose of any of said property, all of said debts were to become due by virtue thereof, and the trustee was authorized to take possession and sell as if the whole were due.

It was further agreed between the Hurts and the firm, which was made party of the third part, that if said notes were paid as they severally became due, the firm would advance to the grantors for the years 1883 and 1884, a sufficient amount of supplies to make the crops, not to exceed the sum of $800 per year, to be advanced only at the option of the firm.   Provision was made for the substitution of a trustee in case Littlejohn should decline, or be unable to act, to be named by the firm or any one having charge of the business.

This deed was signed by Hurt and wife, Littlejohn and Isaac Gates, acknowledged on the twenty-eighth day of March, 1882, and filed for record on the twenty-third day of May.

On the thirtieth day of December, 1882, the appellee sued out, from a justice of the peace, an attachment, showing by his affidavit that it was for a claim of $146 against I. Gates & Bro., and Hudspeth as administrator of Hurt, for work and labor performed for Hurt, then deceased, stating that there were then four bales of cotton standing loaded on a flat car on the Memphis and Little Rock Railroad; also a lot of seed cotton, and about two hundred bushels of corn, raised by plaintiff on the place formerly owned by Hurt. He prayed for judgment and an attachment bond was given. The attachment issued, and the property was seized.

Max Mayer appeared as trustee, was substituted for Gates & Bro., and defended against the claim for a specific lien, denying the same, and claiming to be owner under the deed of trust. The administrator of Hurt answered, acknowledging the debt claimed by Burkett as just, and his willingness that he should be paid out of the cotton seized. Judgment was entered for the debt against the administrator on his confession. The attachment issue was tried by a jury who returned a verdict for plaintiff, and judgment was thereupon rendered that the property be sold for plaintiff's debt.

Mayer, as trustee, appealed. Isaac Gates made the affidavit for appeal, and gave bond, with surety, conditioned that Mayer would have the property which had been attached, subject to the order and judgment of the Circuit Court on appeal, and should pay whatever judgment should be rendered against *the cotton* attached, together with any costs which might be adjudged against him in favor of the plaintiff.

In the Circuit Court the cause was, by consent, tried by the judge as to the facts and the law, or, as the transcript expresses it, sitting as a jury. He found for the plaintiff

in the sum of $140, and judgment was entered that he recover that sum with costs, from the said firm, and the administrator and the surety on the appeal bond. The defendants moved for a new trial, and that being overruled, filed a bill of exceptions and appealed.

Burkett, the plaintiff, testified that he worked for Hurt during the year 1882, under a verbal contract for $165 and his board, and made for him a crop of cotton and corn upon the place, sufficiently identified with the mortgaged property. The sum of $146 remained unpaid. In December Hurt told him to haul the four bales of cotton, afterwards attached, to the gin, and to hold on to it until he was paid the balance of his debt. He did so, but made no arrangement with the ginner about ginning it. Max Mayer, after Hurt's death, came out to Hazen where the cotton was, to take charge of all Hurt's cotton, corn and stock, as trustee for the firm. He took the four bales of cotton from the gin against the objection of plaintiff, and hauled it to the depot, telling plaintiff to come to Devalls Bluff, and Mr. Gates would pay him, or that he should be paid. He went and saw Gates, who declined paying, but offered him fifty dollars to drop the matter. Whereupon he attached. The cotton was worth thirty-five or forty dollars per bale; the seed cotton fifty or sixty dollars.

With regard to the promise by Mayer, the testimony of plaintiff was sustained by several others, and it was further shown that it was "generally understood" at Devalls Bluff that Mayer was a partner in the firm.

The defendants offered in evidence the trust deed, which has several marginal notes, showing that several portions of the land had been, from time to time, released. Isaac Gates testified that he had released a portion in October, 1882, at Hurt's request, and upon condition that the proceeds of the sale should be applied to the notes falling

due in 1883 and 1884.  Of these proceeds he received $1,570 and retained $1,470, after letting Hurt have $100. Of the proceeds of another portion, early in December, sold under the same condition, he received $1,200.  Afterwards he agreed that Hurt should sell another portion "as before," for $220, and a pair of mules worth $250, which he did.  The vendee turned over to the firm the money and mules after Hurt's death.  These sums, amounting to $3,140, were in the absence of witness allowed to Hurt before his death, by the book-keeper of the firm, who gave up the note for $1,634.31, due in 1882; also, the note for $255.45, due at the same time, and another note for $152.08, placing the remainder as a credit on the note due in 1884.

During 1882 he testifies that the book account of Hurt amounted to $2.440.40, to which must be added the sum of $300, due the firm for rent of the land upon which the cotton was raised, making $2,540.40.  Against that the firm had received during Hurt's life, and since his death, before the beginning of this suit, $2,273.66, the proceeds of cotton and corn.  This was applied to the current account, leaving a balance of $166.77.  They received, also, after Hurt's death, mules, covered by the mortgage, worth $750, which they applied to the notes due in 1883 and 1884.  He denies that Max Mayer was a partner, or authorized to contract for the firm, although he says Mayer had been appointed trustee in place of Littlejohn.

Max Mayer himself testified that when he took the cotton he paid the ginner $4.40 per bale for ginning.  He denies that he promised plaintiff that Gates & Bro. would pay him for the cotton; told him that he supposed they would do so if they found it all right.

1. LABOR-ER'S LIEN: None without writing.

The court refused to make any declarations of law regarding the validity of plaintiff's claim as a laborer's lien, holding them inapplicable.  This was correct.  There

could be no statutory laborer's lien without writing. (*Sec. 2 of act of 1875, p. 230, Pamphlet Acts*.) The claim of plaintiff stood upon the footing of an ordinary debt, to be probated after Hurt's death against his estate. If he were pledgee of the four bales of cotton, he would be entitled to rely only upon such rights as that might have given to any other creditor of Hurt.

It refused also to declare that Gates & Bro. had the right, as against the plaintiff, to apply the funds received to the notes of 1883 and 1884. This was correct. The right of a creditor to make application of payments to one of several debts owing from the debtor, applies only to those that are then due, and does not apply at all when the debtor himself makes the appropriation.

*2. Application of payments.*

The court, of its own motion, declared that Mayer, not being trustee, or agent of the trustee, was not authorized in law, or by the terms of the trust deed, to take the cotton from the possession of plaintiff against his will. This would be correct upon one view of the facts which the court might find; that is, that the possession of plaintiff, as pledgee, was proven, and there was a failure of sufficient proof to show that Mayer had been substituted as trustee. The declaration was not erroneous in law upon the facts assumed, and there being no jury, it cannot be objectionable as misleading.

He also declared that neither the trustee nor *cestui que trust* had authority to take possession of, or sell any more of the trust property than was necessary to pay the debts due in 1882. This is a fair construction of the contract so far as regards the *crops* (which is all that is here concerned), upon the hypothesis which the court was authorized to determine, that the debts of 1882 secured by the mortgage had been met without default. It is not so clear that even upon default of payment of any one note the whole was to

7

become due. It is not so expressly provided. But certainly the parties could not have contemplated that after payment each year, of all the debts falling due that year, the balance of the crops should either go in advance upon the future notes, or be held, subject to waste, and useless in the hands of Hurt. The court added that when all the debts of 1882 had been paid up, the power of the trustee was *pro tanto* exhausted. This is not objectionable as applicable to the facts.

As facts the court found that Burkett had possession of the four bales, and of the cotton in the seed, which had been attached, holding by Hurt's permission as a security for his claim for wages. That there was due him on that account $146. Further, that the notes for 1882, secured by the mortgage, had all been taken up as paid, by the proceeds of land sales. This finding as to payment was correct. They had been delivered up by the book-keeper of the firm. Gates says only it was in his absence. That would not affect the legal consequence of the act. Some other member of the firm may well have authorized it. It was in the general scope of the book-keeper's authority. Gates does not say he made any effort to regain the notes, or correct the mistake, if it were one.

The finding as to plaintiff's possession, as pledgee, was erroneous, save as to the four bales of cotton, worth from thirty-five to forty dollars per bale, or as found by the court, $150 altogether. There was no evidence that the seed cotton in pens, or corn, or anything else was ever in his possession, save as a laborer on the place. This was the possession of Hurt, and of his administrator after his death. There was evidence to support plaintiff's possession of the four bales of cotton. The court found the whole of their value to be $150, from which it deducted eighteen dollars charges. So far it was correct, but the

court erred in estimating the value of the seed cotton at all as the basis of a judgment against the firm.

After reciting that no question had been made nor issue raised as to the validity of the attachment or seizure of the cotton or corn, nor any objection made by defendants to any of the proceedings except as set forth in the bill of exceptions, the court found for the plaintiff, as aforesaid, in the sum of $140, and directed judgment to be entered against defendants for that amount.

The motion for a new trial is based on want of evidence and error in findings, and in declarations of law.

The proceedings have been very loose and irregular. The appeal bond was anomalous, but no objection was made to it at the time, and it was intended and taken to be such as would authorize a judgment against the surety in the Circuit Court. The judgment against the administrator of Hurt was proper for the whole amount due. That much is affirmed without qualification. Indeed, although he is included as "defendants" in the appeal, he evidently did not intend it. So much of the debt as may not be satisfied out of the cotton may be probated against the estate.

Gates & Bro. did not owe plaintiff anything. There is no proof of his possession of any other property than the four bales of cotton. To that extent, or the sum of $132, the firm and its sureties on appeal are liable. On remittitur of the excess, upon the usual conditions, the judgment must be affirmed as to them also. Otherwise to be reversed and the cause remanded for a new trial.