JONES *v*. DOWELL.

Opinion delivered April 9, 1928.

1. MORTGAGES—INTENTION OF PARTIES.—In order to ascertain whether a mortgage secures an indebtedness other than the note specifically described therein, it is proper to consider the entire mortgage.

2. MORTGAGES—INDEBTEDNESS SECURED.—A mortgage given to secure the payment of a note and providing for the payment of other indebtedness due to the mortgagee secured both the note and the debt for any other advances.

3. PAYMENT—APPROPRIATION.—Where a debtor made payment to his creditor several days before a note was due, and neither party made application of such payment, the law applied it to the payment of a debt then due, and not to the note which was not due.

4. PAYMENT—APPLICATION.—A payment on a note made after it was due should be applied first to the payment of interest.

5. MORTGAGES—SALE BY SUBSTITUTED TRUSTEE.—Where a deed of trust provided that if the trustee was incapacitated by absence or

other cause, another trustee might be appointed, a sale by a substituted trustee in the absence of the trustee was valid.

6. APPEAL AND ERROR—QUESTION NOT CONSIDERED BELOW.—In an action involving an adverse claim to land, a contention that sale under a deed of trust was void for lack of appraisement will not be considered on appeal when it was not raised in the trial court.

7. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.— The chancellor's finding of facts will not be set aside on appeal unless against the preponderance of the evidence.

Appeal from Bradley Chancery Court; *E. G. Hammock,* Chancellor; affirmed.

*B. L. Beasley,* for appellant.

*DuVal L. Purkins,* for appellee.

MEHAFFY, J. This action was begun in the Bradley Circuit Court by plaintiffs, who are appellants here. Plaintiffs alleged that they were the owners and entitled to the possession of the lands described in their complaint; that the defendants were in the actual possession of said lands under some claim unknown to the plaintiffs, and refused to give possession. Plaintiffs claimed under B. J. Lewis, who had purchased said lands from the Rock Island Townsite Company. There was no dispute about the title of B. J. Lewis. Plaintiffs are the only heirs of B. J. Lewis. They allege that defendants were in the wrongful possession of said lands, and refused to deliver possession to the plaintiffs.

Defendants filed answer and motion to transfer to equity. The motion to transfer to equity was granted by the court, over the objections of plaintiffs. Defendants admitted they were in possession of the lands in controversy, and alleged that J. P. Lansdale advanced the money to B. J. Lewis to purchase said lands. That B. J. Lewis and his wife, who is now Mary Lewis Sanders, made a note and mortgage or deed of trust to secure the payment of the indebtedness due to Lansdale. R. W. Carnley was named as trustee in the deed of trust. That H. C. Johnson was substituted as trustee in place of R. W. Carnley. After B. J. Lewis died, the debt to Lansdale not having been paid, H. C. Johnson, substituted

trustee, advertised and sold the land in controversy under the power of sale contained in the deed of trust, and F. R. Dowell became the purchaser. The evidence shows the execution of the note and deed of trust, the sale under the power of sale contained in the mortgage, and it also shows the indebtedness existing at the time of the sale. Plaintiffs moved to transfer the case back to the circuit court, which motion was overruled.

Counsel for appellants state that there is only one question involved, and that is whether the attempted foreclosure sale is valid or void. The lower court held that it was valid, and to reverse that decree plaintiffs prosecute this appeal.

Lewis was indebted to Lansdale, in addition to the note, for supplies furnished. And it is first contended by appellants that the deed of trust was given for the purpose of securing the note for $300 due December 15, 1918, and that nothing whatever was said about future advances in the deed of trust, and that therefore the mortgage was not intended to secure the payment of any debt other than the $300 note. The mortgage or deed of trust covered not only the 15 acres involved in this suit, but also block 52 in the town of Hermitage, some live stock, and the entire crop of cotton and corn to be grown during the year 1918 in Bradley County by the mortgagors. And the mortgage contained the following: "This sale is on condition that, whereas we are justly indebted to J. P. Lansdale in the sum of $300, evidenced by our note of even date, due and payable on December 15, 1918, and bearing 10 per cent. interest from date until fully paid, and have agreed to pay all taxes assigned against the property and to keep the premises insured."

And it also contains the following: "Now if we shall pay said moneys at the time and in the manner aforesaid, and all other indebtedness which may be due said J. P. Lansdale, and all taxes and insurance, then the above conveyance shall be null and void, else to remain in full force."

The deed of trust then contains the power of sale.

In order to ascertain the intention of the parties in the mortgage and whether or not any indebtedness is secured by said mortgage other than the $300 note, it is proper to consider the entire mortgage. This court has frequently held that each case calls for an interpretation of the language of the mortgage, so as to determine whether the description falls within the rule announced. That is, within the rule adopted by this court. See *Patterson* v. *Ogles,* 152 Ark. 395, 238 S. W. 598, and cases there cited.

We think, under a proper construction of the mortgage, it secures the debt for advances made as well as the $300 note mentioned. The 15 acres of land only was sold under the power of sale in the mortgage. The mortgage included, as we have said, block 52 in the town of Hermitage, some live stock, and the entire crop raised by the mortgagors, and provided for the payment of all other indebtedness and taxes and insurance. But whether it included the advances or not appears to be immaterial in this case.

Appellant argues that, when you apply the rule as to the application of payments, the note secured by the mortgage would be paid and whatever indebtedness there was in addition to that would not be secured by the mortgage, and therefore the mortgagee would have no right to sell. The first payment of $250.70 was made before the note was due, and the rule with reference to application of payments, if neither the debtor nor creditor made any application, would require this payment to be applied to a debt that was due rather than to the note which was not due. In fact, the creditor would not have had the right to apply this payment, which was made before the maturity of the note, to a debt not due.

The rule is stated in Cyc. to be that the law will apply the payment to a debt that has matured rather than one not yet due. 30 Cyc. 1242.

Again it is said: "Except where equitable principles require a different disposition thereof, or where a

different application has been made by the parties themselves, it is a well-settled rule that a payment should be applied by the court to the oldest debt, where there is more than one debt. That is, the debt first becoming due." 30 Cyc. 1243.

It is also held by many courts that the oldest debt means the first debt due, and not the first debt contracted. Numerous cases are cited under the above section of Cyc.

The following is a note in 30 Cyc. 1244: "Where several notes have been given at the same time by the same person and payable to the same party, but falling due at different times, partial payments made by the debtor to the creditor when the notes are all due will be applied to the payment of principal and interest of the note first due, and so on in this order until the last note is paid."

In this case we have the payment made some days before the note is due, and, as neither party made any application of the payment, the law applies it to the payment of the debt due and not to the note which was not yet due.

Another rule well settled is that even a payment that was thereafter made, if it applied to the note, would go first to the payment of interest.

"As to the appropriation of payments, there is no proof that the right of appropriation was exercised by either party at the time the payments were made, and the court below found that they were made generally, and appropriated them according to priority, the first payment to the first items on the accounts between the parties, which was the rule approved in *Kline* v. *Ragland,* 47 Ark. 111, 14 S. W. 474, where it is held that "when, in the absence of appropriation by a debtor, the creditor appropriates payments from him to a running account, the law will apply them to the items of the account in the order of their dates." Citing *Price* v. *Dowdy,* 34 Ark. 285; and continuing, the court said: "The latter case says, 'a different agreement may be shown by evidence'." *Lazarus* v. *Freidheim,* 51 Ark. 371, 11 S. W. 518.

The court in the above case holds that they are paid according to the priority. As we have already shown, however, that means of debts that are due. The creditor would have no right and the law would not apply a payment to a debt that was not due rather than to a debt that was due.

"The right of a creditor to make application of payments to one of several debts owing from the debtor applies only to those that are then due, and does not apply at all when the debtor himself makes the appropriation." *Gates Bros.* v. *Burkett,* 44 Ark. 90.

Applying the payments that were made according to these rules, the first payment that was made would have to go to the payments other than the $300 note, because it was not due. Subsequent payments, even if they were applied to the note, would be applied first to interest; so that it would make but little difference in the result whether the deed of trust secured the payment of the accounts or not.

Appellants next contend that the substituted trustee was without authority to act in the attempted foreclosure sale, and calls attention to *Stallings* v. *Thomas,* 55 Ark. 326, 18 S. W. 184. It appears from the quotation that the deed of trust in that case provided that the beneficiary might substitute another trustee in case the trustee named in the deed fails or refuses to execute, and the court held that, since he had never been asked to make the sale, it could not be held that he had failed or refused to execute it. But in the case at bar the deed of trust provided that, if the trustee was incapacitated by sickness, absence, death or any other cause, a trustee might be substituted, and the undisputed proof shows that the trustee, Carnley, was absent, and, that being true, the beneficiary had a right to substitute Dowell.

It is next contended by appellant that the sale is void because there was no appraisement. The record does not show whether there was an appraisement or not, and this was not an issue in the court below, and there-

fore cannot be considered here. And of course, if the sale is valid, as held by the court below, this is a complete answer to appellants' next contention, that Dowell was holding as mortgagee in possession.

It is argued also that the 15 acres of land involved in this controversy was the homestead of B. J. Lewis and his family, and that some of his heirs are minors. If the sale was valid under the power of sale in the mortgage it would be unimportant whether it was a homestead or not; but the undisputed proof shows that the mortgage included the 15 acres involved in this suit, and this tract of land was described by metes and bounds in the mortgage, and the mortgage provides that, in addition to that, block 52 in the town of Hermitage is mortgaged. Block 52 may or may not be contiguous to the 15 acres. If it were not, of course the 15 acres would not be a part of the homestead. If it were contiguous, it would then depend upon the value as to how much could be claimed as a homestead. But the undisputed proof shows that the homestead, block 52, was included, but that Lansdale would not sell that, and told the widow of B. J. Lewis that he would not sell it, and it is therefore not involved in this suit.

As to whether the deed of trust had been correctly satisfied was a question of fact to be determined by the court, and, even if it had been satisfied on the record through mistake and the debt had not been paid, such satisfaction would not prevent a sale of the property to collect the debt. But all of the facts were determined by the chancellor, and we could not reverse on that unless we could say that his finding was against the preponderance of the evidence.

Our conclusion is that the decree of the chancery court is correct, and it is therefore affirmed.