BENTON STATE BANK *v.* REED

5-3858                                   401 S. W. 2d 738

Opinion delivered April 25, 1966

*Fred E. Briner,* for appellant.

*Hall, Purcell, Boswell & Tucker, Wendell O. Epperson,* for appellee.

CARLETON HARRIS, Chief Justice. Appellee, Donald A. Reed, is a resident of Pulaski County, Arkansas. Appellant, Benton State Bank, has its principal office for business in Benton, Saline County, Arkansas. William R. Buchanan and Anna B. Buchanan are residents of Saline County, and at all times pertinent to this litigation were engaged in the building and glass work business, the company doing business as Benton Glass Company (hereinafter called Buchanan), and operating principally in the city of Benton. In the spring of 1960, Buchanan commenced borrowing money from Reed. In May, 1960, he borrowed $3,000.00; in June, $1,000.00, and on July 28, Buchanan borrowed an additional $6,000.00, and executed a promissory note in the sum of $10,000.00, representing the entire indebtedness at that time. The note was to be paid at the rate of $167.00 per month, the first installment due one month from date, and like payments on the 28th day of each succeeding month thereafter until paid in full. A mortgage was executed, and delivered to Reed, on realty in Saline County for the purpose of securing Buchanan's indebtedness. The printed portion of the mortgage, just preceding the defeasance clause, contains the following language:

"And it is agreed that the failure to pay any one of said installments when due or any part thereof or the insurance above mentioned or taxes against said property when due that all installments shall immediately become due and payable, and that this mortgage shall cover and secure any and all renewals of said note for said indebtedness or for any part thereof *and all other loans and advances made from date hereof until*

*the foreclosure or satisfaction of this mortgage.* (Emphasis supplied.)''

Thereafter, appellee advanced the following sums to Buchanan on the respective dates mentioned:

August 2, 1960—$2,000.00

August 16, 1960—3,200.00

September 8, 1960—5,000.00

December 12, 1960—5,000.00

On October 3, 1964, Buchanan executed to the Benton State Bank a note in the sum of $30,000.00, secured by a realty mortgage covering the same property mortgaged to Reed. On the same date Buchanan tendered to Reed the sum of $2,722.62, which Buchanan contends represented the balance due on his mortgage indebtedness to Reed, but the latter would not accept this amount, contending that the subsequent loans, totaling $15,200.00 were covered by the mortgage. Buchanan took the position that the subsequent loans were not secured, and suit was instituted against appellee to compel satisfaction of the mortgage. Reed brought in the bank as a defendant. On trial, the court rendered judgment for appellee in the amount of $12,851.97, plus a $500.00 attorneys fee; rendered judgment for the Benton State Bank in the amount of $26,982.27, plus $500.00 for attorneys fees, and further rendered judgment for Binswanger Glass Company in the amount of $5,438.37. The court held that Reed's lien on the mortgaged real estate was prior and paramount to that of Benton State Bank and Binswanger, and that the bank's lien was paramount to that of Binswanger. From the decree so entered, appellant brings this appeal.[1]

A study of our holdings on this subject discloses several cases where we held that the mortgage secured future advances, and also several to the contrary. Actually, the result in the cases seems to depend upon the

---

[1]Binswanger has not appealed.

particular facts and circumstances. The case of *American Bank and Trust Company* v. *First National Bank of Paris,* 184 Ark. 689, 43 S. W. 2d 248, is one of the principal cases relied upon by appellant. However, there, the clause in the mortgage (said to cover future advances) was somewhat different from that in the instant case, and there was no connection at all between the original indebtedness and the subsequent advances. In *American,* the language covering future advances appeared in the defeasance clause, reading as follows:

"Now, if the said T. B. Harris and Susanna Harris shall pay said money at the time and in the manner aforesaid, together with renewals, extensions or advances, then the above conveyance shall be null and void."

Here, the clause precedes the defeasance[2] clause, and obviously, the language in the present case is far more clear and forceful than the clause in *American.*

Appellant also relies upon *Jacobs* v. *City National Bank of Ft. Smith, Ark.,* 229 Ark. 79, 313 S. W. 2d 789, but the language in that mortgage was also entirely different from that in the instant case. Again, the clause depended upon appeared in the defeasance clause of the mortgage, and reads as follows:

"Now if the said mortgagors shall pay or cause said indebtedness to be paid with interest according to the terms hereof *and all other indebtedness of the mortgagors to mortgagee*; then this instrument to be null and void; otherwise to remain in full force and effect."

In *Word* v. *Cole,* 122 Ark. 457, 183 S. W. 757, a recital appears, which is very similar to that in the Buchanan mortgage, though the language in the instant case is much more unequivocal:

---

[2] We have also held language appearing in a defeasance clause to be sufficient to secure future advances, finding that it was the intent of the parties that this be done. *Jones* v. *Dowell,* 176 Ark. 986, 4 S. W. 2d 949.

" * * *whereas, the first party desires to secure the payment of said sum and all other sums that are now due or that may hereafter become due to said party of the third part,* * *. "

We held that the language was sufficient to cover advances. See also *Thompson* v. *B. W. Reeves & Company*, 170 Ark. 409, 279 S. W. 1011, and cases cited therein.

Buchanan testified that there was no intention to include future advances, while appellee testified to the contrary, but one circumstance points clearly toward appellee's version. Reed started lending money to Buchanan in May, 1960, and when the total reached $10,000.00, he obtained security; the subsequent loans, however, totaled over $15,000.00. Unless Reed felt that he already had security for these advances, it certainly seems logical that he would have taken another mortgage to cover the additional amounts.

Appellant says that the checks (subsequent to July 28, 1960) were made to the Benton Glass Company, rather than to Buchanan, but these checks are endorsed "Benton Glass Company by W. R. Buchanan" or "W.R.B.," and the only notes appearing in the record to cover these loans are executed by Buchanan and his wife.

Appellant complains that the language securing advances appears in the printed portion of the mortgage, and is in small print. He argues that there is significance in the fact that no typewritten information was placed in the mortgage to indicate to a third party that future advances would be made. It appears to us that it would be somewhat pointless to type in a paragraph that already clearly appears in print. That would be to say that the printed portion of a mortgage carries no weight at all—and this is not true. As far as the size of the print is concerned, this clause is of the same size

as the rest of the printed matter in the instrument, though this was not true in *Jacobs*.

Obviously, appellant had notice that Buchanan was indebted *in some amount* to Reed, for it issued a cashier's check to Buchanan (in the sum that Buchanan argues is the true amount of the secured debt) to satisfy this indebtedness. Inquiry into the amount of the debt could have easily been made by writing a letter to Reed or by making a telephone call. Even if there had been no knowledge on the part of appellant that Buchanan was indebted to some other party, it would appear that in the exercise of ordinary caution, the bank, an institution whose very business is lending money, would have conducted some investigation before lending $30,000.00. This is particularly true when the mortgage, given by Buchanan to the bank, contains *the same identical clause with reference to advances* that appears in the mortgage to Reed, and which is the crux of this litigation.

We are unable to say that the Chancellor's findings are against the preponderance of the evidence, and the decree is accordingly affirmed.

Counsel for Reed request a reasonable attorneys' fee for work done on this appeal, and we think this request should be granted in the sum of $200.00.

It is so ordered.

AMSLER, J., not participating.